JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Love & Company, Inc.

**DEFENDANTS**

Cadbury Senior Services, Inc. dba Cadbury Senior Lifestyles, Cadbury at Cherry Hill, Inc., Premier Cadbury LLC

**(b)** County of Residence of First Listed Plaintiff   Frederick
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Michael LiPuma, Esq., Law Office of Michael LiPuma, 325 Chestnut, Suite 1109, Philadelphia, PA 19106, (215) 922-2126

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1  U.S. Government Plaintiff
- ❏ 3  Federal Question *(U.S. Government Not a Party)*
- ❏ 2  U.S. Government Defendant
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ☒ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | Product Liability | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 340 Marine | ❏ 368 Asbestos Personal Injury Product Liability | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 720 Labor/Management Relations | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ☒ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 740 Railway Labor Act | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice | ❏ 385 Property Damage Product Liability | ❏ 751 Family and Medical Leave Act | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 196 Franchise | | | ❏ 790 Other Labor Litigation | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| | | | ❏ 791 Employee Retirement Income Security Act | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | | | ❏ 895 Freedom of Information Act |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ❏ 896 Arbitration |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 950 Constitutionality of State Statutes |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | | ❏ 550 Civil Rights | | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ❏ 2  Removed from State Court
- ❏ 3  Remanded from Appellate Court
- ❏ 4  Reinstated or Reopened
- ❏ 5  Transferred from Another District *(specify)*
- ❏ 6  Multidistrict Litigation - Transfer
- ❏ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1332

Brief description of cause:   Breach of contract and related claims

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   $235,803.51

CHECK YES only if demanded in complaint:
JURY DEMAND:   ❏ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   8-1-17

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| LOVE & COMPANY, INC., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | |
| v. | : | |
| | : | |
| CADBURY SENIOR SERVICES, INC. d/b/a | : | |
| CADBURY SENIOR LIFESTYLES; | : | |
| CADBURY AT CHERRY HILL, INC.; | : | |
| PREMIER CADBURY, LLC  d/b/a | : | |
| PREMIER CADBURY OF CHERRY HILL, | : | |
| | : | |
| Defendants. | : | |

## INTRODUCTION

1.      This is an action arising out of false promises to pay for sales and marketing services provided to a continuing care retirement community in Cherry Hill, NJ.  It is undisputed that Plaintiff Love & Company, Inc. provided the services, and that $165,969.79, plus contractual interest of $69,833.72 (which continues to accrue), is owed to Plaintiff.  Defendants Cadbury Senior Services, Inc. and Cadbury at Cherry Hill, Inc. initially promised to pay for the services, then reaffirmed their promise when they assured Plaintiff that the open invoices would be paid out of the sale of the facility.  Defendant Premier Cadbury, LLC, which acquired the facility, agreed to pay Plaintiff's outstanding invoices as part of the acquisition, but then reneged on its promise.  Plaintiff has been severely damaged by the refusal of these Defendants to satisfy their contractual obligations to pay.

## PARTIES

2.      Plaintiff Love & Company, Inc. ("Plaintiff" or "Love") is a Maryland corporation with its principal place of business located at 1209 N. East Street, Frederick, MD 21701.

3.      Defendant Cadbury Senior Services, Inc., doing business as "Cadbury Senior Lifestyles" (hereinafter "Cadbury Senior Services") is a New Jersey corporation with its place of business located at 51 Haddonfield Road, Suite 105, Cherry Hill, NJ  08002.

4.      Defendant Cadbury at Cherry Hill, Inc. ("Cadbury at Cherry Hill") is a New Jersey corporation with its principal place of business located at 2150 Route 38, Cherry Hill, NJ 08002.

5.      As described in greater detail below, Cadbury Senior Services owned Cadbury at Cherry Hill; controlled the decisions of Cadbury at Cherry Hill as to the performance of the contract with Plaintiff Love, including how and when Plaintiff Love would be paid; and controlled the decisions as to the terms of the sale of the assets of Cadbury at Cherry Hill to Defendant Premier.  Defendant Cadbury Senior Services was thus the "moving force" behind the transactions at issue in this dispute.  Defendant Cadbury Senior Services and Defendant Cadbury at Cherry Hill are sometimes collectively referred to herein as the "Cadbury Defendants."

6.      Defendant Premier Cadbury, LLC, doing business as Premier Cadbury of Cherry Hill (hereinafter "Premier"), is a New Jersey limited liability company with its principal place of business at 2150 Route 38 West, Cherry Hill, NJ 08002.  None of the members or owners of Premier Cadbury are citizens of Maryland, where Plaintiff Love is a citizen.

## JURISDICTION AND VENUE

7.      There is complete diversity between Plaintiff, on one hand, and Defendants, on the other hand.  The amount in controversy exceeds $75,000, exclusive of interest and costs. Therefore, this Court has diversity jurisdiction pursuant to 28 U.S.C. §1332.

8.      Pursuant to 28 U.S.C. §1391, venue is proper in this Court because a substantial part of the events and omissions giving rise to the claims occurred in this District, and because all of the Defendants reside in this District.

## FACTS

9.      Love is in the business of providing sales, marketing and advertising services.

10.     On September 25, 2013, Love entered into Terms of Agreement ("Agreement") with Defendant Cadbury at Cherry Hill, which Agreement would govern the provision of sales and marketing services by Love, and payment for such services.  A true and correct copy of the Agreement is attached at Exhibit 1 and incorporated by reference.

11.     In 2014, Love and Cadbury at Cherry Hill further agreed on the scope of the sales, marketing and advertising services that Love would provide to Cadbury at Cherry Hill, and the amounts that Love would be paid for such services.

12.     At all times, Love provided the services promised, and did so in a good and professional manner.

13.     Defendants continue to benefit from the services that Love provided, including its sales to individuals who now reside in the facility and for which Defendants have received, and continue to receive, payment.

14.     Beginning in 2015, Cadbury at Cherry Hill began falling behind in its payments to Love.

15.     To date, the total principal amount of the invoices due and owing to Love is $165,969.79, plus contractual interest of $69,833.72 per the Agreement.  A true and correct copy of the ledger showing the balance due is attached as Exhibit 2 and incorporated by reference.

16.     The financial officers of Defendant Cadbury Senior Services, the parent of Defendant Cadbury at Cherry Hill, were responsible for controlling the flow of payments to Love, and also controlling the flow of communications with Love about those payments.

17.     Those financial officers were Arnie Weiner, the Chief Financial Officer for Defendant Cadbury Senior Services, and Michelle Goldstein, the Controller for Defendant Cadbury Senior Services.

18.     By the summer of 2015, Defendant Cadbury Senior Services was in the process of trying to sell its Cherry Hill facility, known as Cadbury at Cherry Hill.

19.     On August 31, 2015, Michelle Goldstein emailed Love on behalf of Cadbury Senior Services and promised that once Cadbury at Cherry Hill was sold, "the intent is that all [accounts payable] will be paid from the proceeds" of the sale. A true and correct copy of this August 31 email is attached at Exhibit 3 and incorporated by reference.

20.     On October 13, 2015, Michelle Goldstein was even more specific in her promises of payment to Love.  She emailed Love on behalf of Cadbury Senior Services that "At this point we are very short on funds. You will be paid in full once the sale of Cherry Hill is finalized and we receive proceeds from the transaction. The anticipated date would be end of year and proceeds to follow in January." A true and correct copy of this email is attached hereto as Exhibit 4 and incorporated by reference.

21.     In or around April 2016, Cadbury Senior Services sold the assets of Cadbury at Cherry Hill to Defendant Premier.  The officers of Cadbury Senior Services were responsible for the negotiations with Defendant Premier, and the officers of Cadbury Senior Services ultimately approved the terms of the agreement with Defendant Premier.

22.     Prior to the sale to Premier, and in addition to the emails described above, Arnie Weiner and Michelle Goldstein of Cadbury Senior Services repeatedly promised Rob Love, Tom Mann and Dotty Ashley—all of whom were employees and agents of Plaintiff Love-- that Love's open invoices would be paid in full when Cadbury at Cherry Hill was sold.

23.     After the sale, on November 18, 2016, Arnie Weiner of Cadbury Senior Services told Tom Mann, an Executive Vice President of Love, that the payment of vendors, including Love, was one of the terms of the contract between the Cadbury Defendants and Premier, but that Premier had reneged on that part of the agreement.

24.     In a telephone conversation with Rob Love on November 30, 2016, Arnie Weiner of Cadbury Senior Services confirmed that Defendant Premier had agreed, as part of its contract with the Cadbury Defendants, to pay Love's open invoices, but that Defendant Premier had refused to pay.

25.     Love made repeated demands on Premier to pay the balance owed.  In response, Premier only claimed that it did not have the money to pay.  Premier did not refute that it was contractually obligated to pay.  See November 16, 2016 email, a true and correct copy of which is attached hereto as Ex. 5 and incorporated by reference.

26.     As demonstrated above, Defendant Cadbury Senior Services was the moving force behind the performance of Cadbury at Cherry Hill under its Agreement with Love, including the decisions of when and how to pay Love. Defendant Cadbury Senior Services was also the moving force behind the sale of Cadbury at Cherry Hill to Premier, including the negotiation of the terms that required payment of vendors such as Love.  Defendant Cadbury Senior Services controlled these decisions on behalf of Defendant Cadbury at Cherry Hill and, therefore, is directly liable to Plaintiff Love.

27.    Love's invoices remain unpaid.

### COUNT I--BREACH OF CONTRACT (Versus the Cadbury Defendants)

28.    Plaintiff Love incorporates by reference its previous allegations.

29.    Pursuant to the terms of the Agreement, Cadbury at Cherry Hill agreed to pay Love's invoices within 15 days, and further agreed to pay interest at the rate of 1.5% per month on any invoices remaining unpaid for more than 45 days.  Cadbury at Cherry Hill also agreed to reimburse Love's expenses incurred in performing services.

30.    Love proceeded to provide sales, marketing and advertising services to Cadbury, and did so in a good and professional manner.

31.    Cadbury at Cherry Hill has breached the Agreement by failing to pay Love's invoices.

32.    Cadbury Senior Services is liable for the breach because it controlled the performance of Cadbury at Cherry Hill under the Agreement, and specifically controlled the decision of how and when to pay Love's open invoices, all as detailed more fully above.

33.    Love has been damaged as a proximate result of the breach.

WHEREFORE, Plaintiff Love respectfully requests that this Court enter judgment in its favor and against the Cadbury Defendants, for compensatory damages in the principal amount of $165,969.79, contractual interest of $69,833.72, additional prejudgment and postjudgment interest, costs, and such other and further relief as the Court deems just and proper.

### COUNT II--BREACH OF CONTRACT (Versus Premier Cadbury)

34.    Plaintiff Love incorporates by reference its previous allegations.

35.     Pursuant to the terms of the contract between the Cadbury Defendants and Premier, Premier agreed to pay the open invoices of the vendors of Cadbury at Cherry Hill, including Love.

36.     The open invoices of Love were specifically contemplated by Defendant Premier and the Cadbury Defendants when they made their agreement to sell to Premier the assets of Cadbury at Cherry Hill.

37.     Defendant Premier and the Cadbury Defendants intended to benefit Love by agreeing that the invoices of vendors such as Love would be paid by Premier.

38.     Plaintiff Love thus has standing as a third-party beneficiary to sue for Premier's failure to pay Love's open invoices.

39.     Premier has breached its contractual obligations by failing to pay Love's open invoices.

40.     Love has been damaged as a proximate result of the breach.

WHEREFORE, Plaintiff Love respectfully requests that this Court enter judgment in its favor and against Defendant Premier, for compensatory damages in the principal amount of $165,969.79, plus contractual interest of $69,833.72, additional prejudgment and postjudgment interest, costs, and such other and further relief as the Court deems just and proper.

### COUNT III—PROMISSORY ESTOPPEL (Versus Cadbury Senior Services)

41.     Plaintiff Love incorporates by reference its previous allegations.

42.     During the communications that occurred between Plaintiff Love and Defendant Cadbury Senior Services, Defendant Cadbury Senior Services made clear and definite promises that Love's open invoices would be paid when Cadbury at Cherry Hill was sold.

43.     Defendant Cadbury Senior Services made these promises with the expectation that Plaintiff Love would rely on its promises.

44.     Plaintiff Love reasonably relied on the promises by Defendant Cadbury Senior Services.

45.     Plaintiff Love has suffered substantial detriment as a result of its reasonable reliance.

WHEREFORE, Plaintiff Love respectfully requests that this Court enter judgment in its favor and against Defendant Cadbury Senior Services, for compensatory damages in the principal amount of $165,969.79, plus contractual interest of $69,833.72, additional prejudgment and postjudgment interest, costs, and such other and further relief as the Court deems just and proper.

### COUNT IV – UNJUST ENRICHMENT (Versus the Cadbury Defendants)

46.     Plaintiff Love incorporates by reference its previous allegations.

47.     Plaintiff Love provided services in good faith for the benefit of the Cadbury Defendants.

48.     Plaintiff Love expected compensation for the services it rendered.

49.     The Cadbury Defendants retained the benefit of the services, and such retention without payment would be unjust.

50.     The failure by the Cadbury Defendants to provide compensation to Plaintiff Love constitutes unjust enrichment.

WHEREFORE, Plaintiff Love respectfully requests that this Court enter judgment in its favor and against the Cadbury Defendants, for compensatory damages in the principal amount of $165,969.79, contractual interest of $69,833.72, additional prejudgment and postjudgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT V – QUANTUM MERUIT (Versus the Cadbury Defendants)

51.     Plaintiff Love incorporates by reference its previous allegations.

52.     Plaintiff Love performed services in good faith, as described above.

53.     The Cadbury Defendants accepted the services rendered by Plaintiff Love.

54.     Plaintiff Love expected to be compensated for providing the services.

55.     Plaintiff Love is entitled to the reasonable value of the services, which is $165,969.79, plus contractual interest of $69,833.72.

WHEREFORE, Plaintiff Love respectfully requests that this Court enter judgment in its favor and against the Cadbury Defendants, for compensatory damages in the principal amount of $165,969.79, contractual interest of $69,833.72, additional prejudgment and postjudgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT VI – UNJUST ENRICHMENT (Versus Premier)

56.     Plaintiff Love incorporates by reference its previous allegations.

57.     Plaintiff Love provided services in good faith that have benefitted Defendant Premier.

58.     Plaintiff Love expected compensation for the services it rendered.

59.     Defendant Premier retained the benefit of the services, and such retention without payment would be unjust.

60.     The failure by Defendant Premier to provide compensation to Plaintiff Love constitutes unjust enrichment.

WHEREFORE, Plaintiff Love respectfully requests that this Court enter judgment in its favor and against Defendant Premier, for compensatory damages in the principal amount of $169,969.79, contractual interest of $69,833.72, additional prejudgment and postjudgment interest, costs, and such other and further relief as the Court deems just and proper.

Dated: 8 - 1 - 17

Michael LiPuma, Esq.
325 Chestnut Street, Suite 1109
Philadelphia, PA  19106
(215) 922-2126